**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

**SHIRLEY BARNES** **PLAINTIFF**

**v.** **No. 3:23-cv-281-BJB**

**WHATEVER IT TAKES TRANSMISSIONS & PARTS, INC.** **DEFENDANT**

* * * * *

**OPINION & ORDER GRANTING SUMMARY JUDGMENT**

Shirley Barnes sued her former employer, Whatever It Takes Transmissions & Parts, under the Family and Medical Leave Act. Following her heart attack, she says that she was fired by WIT, which (for its part) says she quit. Answering that question isn't necessary to reject Barnes' FMLA-interference claim and grant summary judgment to WIT, however. The record wouldn't allow a jury to find that she could have returned to work moving inventory in the warehouse at the end of her 12-week FMLA leave period. Nor that she suffered damages based on any hypothetical interference with her protected leave. And as for a hypothetical FMLA-retaliation claim, Barnes hasn't asserted one. Even if she had, no genuine issue of fact would necessitate a trial and potentially support liability on that claim, either.

## I. THE UNDISPUTED RECORD

Barnes, a long-time employee of Whatever It Takes, suffered a serious heart attack on July 28, 2022. Amended Complaint (DN 6) ¶ 5. She underwent open-heart surgery on August 2, 2022. *Id.*; Motion for Summary Judgment (DN 66) at 4–5; Response (DN 70) at 2. After this episode, Barnes "was medically unable to work" her warehouse job at WIT, Response at 2, which required the "lifting … of items weighing up to fifty pounds as well as continuous walking and standing," Motion at 2. Aware that Barnes could not work while in recovery, "WIT treated Barnes' leave as FMLA-protected." Motion at 7.

Five weeks later, WIT sent Barnes a letter dated September 12, 2022. The company asserts that it had heard little from Barnes since the surgery and aimed "to prompt her into contacting the company to provide a status update." Motion at 6 n.4. Barnes offers a different interpretation: WIT sent this letter to "fir[e] [her] for exceeding what WIT described as a 4 week justified leave policy." Amended Complaint ¶ 7. All agree, however, that WIT "formally separated Plaintiff in early October 2022." Response at 5. "WIT consider[ed] Barnes' employment to have been

terminated effective October 5, 2022." Motion at 7. That day, Barnes had become "angry" during a phone call with WIT's HR director, Pamela Herm, and yelled profanities at her. *See* Barnes Deposition (DN 66-1) at 71:13–72:2; Herm Affidavit (DN 66-2) ¶ 6.[1]

The relationship between Barnes and WIT then fell quiet, at least for a time. On October 25, 2022, Barnes' "cardiologist issued a written release clearing her to return to work." Response at 3, 5; Motion at 8 (citing Deposition at 79:7–80:19). But she apparently did not (and perhaps could not) return to work at WIT or elsewhere. Barnes applied for disability benefits from the Social Security Administration in November 2022. Barnes SSA Application and Determination (DN 66-3) at 11. The Administrator granted her application in September 2023, backdating benefits to January 2023. *Id.* at 12.

Around the same time, in June 2023, Barnes (through a lawyer) sued WIT. She filed an amended complaint two months later. It dropped an ERISA claim and alleged that WIT fired her before the expiration of her 12-week FMLA leave. Amended Complaint ¶ 7 ("On 9/12/2022, well prior to Barnes' doctor OKing her return to work following surgery, yet knowing that Barnes was off work from surgery and had 12 weeks to be off from work under the FMLA, WIT fired Barnes for exceeding what WIT described as a 4 week justified leave policy."). After proceeding to discovery, her lawyer withdrew in March 2024. *See* Order Granting Motion to Withdraw (DN 20). Barnes, now proceeding *pro se*, filed an opposition to WIT's motion for summary judgment. That opposition characterized her FMLA claim as one regarding interference: "By cutting off Plaintiff's employment before the expiration of the 12-week period and before she was released to return, Defendant interfered with her statutory rights to protected leave and reinstatement. Response at 5.

## II. FMLA Interference

### A. Statutory and Legal Framework

The FMLA entitles "an eligible employee … to a total of 12 workweeks of leave during any 12-month period for," among other things, "a serious health condition." 29 U.S.C. § 2612(a)(1). And the statute entitles an eligible employee to return to her prior or an equivalent position. § 2614(a)(1). The FMLA also prohibits an employer from interfering with an employee's exercise of these rights or discriminating against her for such exercise. § 2615(a) ("It shall be unlawful for any employer to interfere with … the exercise of … any right provided under this subchapter … or [to]

[1] On an earlier August 14 call, Barnes' fiancé also used profanity with Herm. *See* Deposition at 61:23-62:13.

discriminate against any individual for opposing any practice made unlawful by this subchapter.").

These statutory prohibitions on interference and discrimination have generated "[t]wo distinct theories for recovery on FMLA claims": the entitlement theory and the retaliation theory. *Arban v. West Publishing Corp.*, 345 F.3d 390, 400 (6th Cir. 2003). An FMLA entitlement claim, also known as an interference claim, has five elements,[2] but the only question in dispute here is whether WIT interfered with Barnes' use of leave to which she is undoubtedly entitled by terminating her before the end of her (unpaid) FMLA leave. In addition to the five elements set out in the margin, moreover, an employee must show damages. That is, an "[e]mploye[e] seeking relief under the entitlement theory must … [also] establish that the employer's violation caused them harm." *Edgar v. JAC Products*, 443 F.3d 501, 508 (6th Cir. 2006).

"[T]he FMLA does not provide leave for leave's sake but instead provides leave with an expectation [that] an employee will return to work after the leave ends." *Id.* at 507 (quoting *Throneberry v. McGehee Desha County Hospital*, 403 F.3d 972, 978 (8th Cir. 2005)). *See also id.* (The "FMLA is not a strict-liability statute."). Therefore, "an employer does not violate the FMLA when it fires an employee who is indisputably unable to return to work at the conclusion of the 12-week period of statutory leave." *Id.* at 506–07 (citing *Cehrs v. Northeast Ohio Alzheimer's Research Center*, 155 F.3d 775, 784–85 (6th Cir. 1998)). This rule holds "even if the termination occurs before the end of the [12-week] period." *Id.*; *Cehrs*, 155 F.3d at 785 (parties' dispute over the correct termination date was immaterial because plaintiff "was clearly unable to return to work within the period provided by the FMLA"). And an employee who "remain[s] unable to perform an essential function of [her] position" at the end of the 12-week period has "no right to restoration to another position under the FMLA." *Edgar*, 443 F.3d at 506 (quoting 29 C.F.R. 825.216(c)). *See also Demyanovich v. Cadon Plating & Coatings*, 747 F.3d 419, 429 (6th Cir. 2014) (the "essential function" standard adopted by the DOL in 29 C.F.R. 825.216(c) implements the return-to-work limitations contained in 28 U.S.C. § 2614(a)).

Finally, "the FMLA does not prohibit an employer from discharging an employee for legitimate reasons just because that employee happens to be on FMLA leave at the time of the discharge." *Edgar*, 443 F.3 at 512 (citing *Throneberry*, 403

[2] "[A]n employee must prove that: (1) she was an eligible employee, (2) the defendant was an employer as defined under the FMLA, (3) she was entitled to leave under the FMLA, (4) she gave the employer notice of her intention to take leave, and (5) the employer denied the employee FMLA benefits to which she was entitled." *Edgar v. JAC Products, Inc.*, 443 F.3d 501, 507 (6th Cir. 2006).

F.3d at 978). In other words, an employer that had "a legitimate reason unrelated to the exercise of FMLA rights for engaging in the challenged conduct," will not be liable under the FMLA. *Id.* at 508.

**B. Inability to Return to Work**

No reasonable jury[3] could find that WIT denied Barnes the FMLA benefits to which she was entitled because she was "indisputably unable to return to work at the conclusion of the 12-week period of statutory leave." *Edgar*, 443 F.3d at 507. "[T]he 12-week FMLA period measured from the July 28, 2022, heart attack," Response at 3, expired October 20, 2022, five days before Barnes received medical clearance from her doctor on October 25.

Moreover, even if she had received medical clearance by October 20, Barnes testified that couldn't do the physical labor required for her warehouse job. "[A]fter having heart surgery," Barnes could no longer "lift and tug, and pull" "heavy" items such as "torque converters." Deposition at 67:15–24, 46:24–47:5. But lifting heavy objects was an "essential function of Barnes' position." *Edgar*, 443 F.3d at 506 (citation omitted); Deposition at 18:19–19:21 (Barnes' warehouse job "regular[ly]" involved lifting objects weighing "up to 50 pounds" and "standing … on [her] feet all day."). Because the FMLA does not entitle Barnes to restoration to her previous position (or an equivalent position, for that matter), her interference claim fails. *See Edgar*, 443 F.3d at 506; 29 C.F.R. 825.216(c).

Relatedly, WIT argues that Barnes could not obtain relief under § 2617 for the independent reason that she has suffered no damages from termination during her leave. Motion at 11–13. According to WIT, she was not "prejudiced by the [hypothetical] violation." *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002). And based on Barnes' own admissions, WIT is correct. Barnes "has been unable to seek new employment due to [her] ongoing medical condition." Deposition at 76:4–6. *See also id.* at 77:25–78:4 ("As a direct result of her medical condition, her ability to secure other employment has been substantially limited."). Even if WIT wrongfully terminated her, in other words, Barnes suffered no damages because she couldn't have come back to work after her heart attack—whether at WIT or

[3] Barnes requested a bench trial in her complaint, *see* Amended Complaint at 2, but then argued that a jury must resolve factual disputes in her response, *see* Response at 6. Regardless, the same standard applies at summary judgment. *See Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.") (citation omitted); *Pledger v. United States*, 236 F.3d 315, 324 (6th Cir. 2000) (affirming denial of summary judgment using no-reasonable-jury standard in bench-trial context).

(apparently) elsewhere. *See Williams v. Toyota Motor Manufacturing, Kentucky*, 224 F.3d 840, 844–45 (6th Cir. 2000) (ADA ruling reversed in 534 U.S. 184 (2002)) ("Even if Williams was wrongfully terminated … within the 12-week period covered by the FMLA," she "had suffered no damages" because she could not work for at least nine months after her FMLA leave expired.).

Neither of Barnes' counterarguments rescues her case. *First*, she offers no support for her repeated assertion that the October 25 clearance fell within the 12-week leave period. *See* Response at 3. Counting from the agreed start date, July 28, her FMLA leave indisputably ended on October 20. *Second*, Barnes argues that WIT discharged her on September 12 when it sent her the letter. But Barnes' claim fails regardless of which termination date is correct: she can't show that she could have returned to work at the end of the 12-week leave period. Barnes was "clearly unable to return to work within the period provided for by the FMLA," so WIT did not interfere with her rights whenever it terminated her. *Cehrs*, 155 F.3d at 785.

### III. FMLA Retaliation

The FMLA also protects employees from an employer's "retaliatory discharge for taking leave." *Arban*, 345 F.3d at 403. To "make out a prima facie case of discrimination" the employee must show "that (1) she availed herself of a protected right under the FMLA …, (2) she suffered an adverse employment action, and (3) that there was a causal connection between the exercise of her rights under the FMLA and the adverse employment action." *Edgar*, 443 F.3d at 508; *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

As WIT notes, Barnes has not adequately alleged a retaliation claim, much less all of its elements. And even if she had, no reasonable jury could find that WIT fired her *because* she used FMLA leave.

First, Barnes' amended complaint does not assert a retaliation claim. It doesn't state the elements of a retaliation claim, nor does it plausibly allege that WIT fired Barnes *because* she exercised her right to FMLA leave. Instead, it asserts only that Barnes took FMLA leave and that she suffered an adverse employment action when WIT fired her. Amended Complaint ¶¶ 6–8. But these bare facts alone do not allege a causal connection between her FMLA leave and her subsequent discharge, nor a retaliatory motive. *See Edgar*, 443 F.3d at 512.[4]

[4] When she filed her complaint, Barnes was represented by counsel. Her complaint therefore does not automatically receive the liberal construction typically afforded to *pro se* filings. *See Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011). Barnes then filed her response *pro se* after her attorney withdrew in March 2024. *See* Order Granting Motion to Withdraw (DN 20). And though "[a] document filed *pro se* is to be liberally construed,"

Second, Barnes didn't develop her retaliation claim even after WIT preemptively raised it in its motion for summary judgment. *See* Motion at 13–15. In fact, her response doubled down on her interference theory, expressly arguing that "Defendant *interfered* with her statutory rights to protected leave and reinstatement[, which] is the essence of an *FMLA interference* claim." Response at 5 (emphases added). Barnes thus actively declined the opportunity to affirmatively argue retaliation. Because neither Barnes' complaint nor her response show a causal connection between her use of FMLA leave and her termination, this Court cannot construe her claim to be for retaliation.

Third, and finally, even if Barnes had adequately alleged retaliation, on this record no reasonable jury could find that WIT fired her *because* she used FMLA leave. She must show that WIT possessed a forbidden motive when it discharged her. *See Edgar*, 443 F.3d at 508 ("Under the retaliation theory … the employer's motive *is* an integral part of the analysis."); *Hodgens v. General Dynamics Corp.*, 144 F.3d 151, 160 (1st Cir. 1998). Barnes' deposition does not supply this motive and neither do any of the text messages she exchanged with her supervisor. Barnes points to nothing except arguably the September 12 letter, which itself says nothing about FMLA use. On the other hand, WIT points to undisputed record evidence explaining that it terminated Barnes because it believed she had quit and for using profanities with HR. *See* Herm Affidavit ¶ 5.

## ORDER

On this record, no reasonable jury could find that Barnes was able to return to work within the 12-week statutory leave period or that WIT discharged her because she took FMLA leave. So, the Court grants WIT's motion for summary judgment.

Benjamin Beaton, District Judge
United States District Court

September 30, 2026

*Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted), a party's "status as a pro se litigant does not alter [her] duty on a summary judgment motion." *Viergutz v. Lucent Technologies*, 375 F. App'x 482, 485 (6th Cir. 2010).